UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, SECRETARY OF LABOR, )<br>United States Department of Labor )<br>)<br>    Plaintiff )<br>)<br>        v. )<br>)<br>FORCE CORPORATION, )<br>AB CONSTRUCTION GROUP, INC. )<br>)<br>JULIANO FERNANDES, Individually; and, )<br>ANDERSON DOS SANTOS, Individually, )<br>)<br>    Defendants. )<br>) | Civil Action No. 16-cv-40103-TSH |

### FINDINGS OF FACT, RULINGS OF LAW, AND ORDER ON ACTING SECRETARY OF LABOR'S PETITION FOR ADJUDICATION OF CIVIL CONTEMPT (Document No. 8)

### March 31, 2020

### Introduction

On July 18, 2016 the Secretary of Labor ("Secretary") filed a complaint against the Defendants under the Fair Labor Standards Act, 29 U.S.C. § 217, seeking to recover unpaid wages, and liquidated damages. On that same date the parties submitted to this court a Proposed Consent Order which I entered on August 1, 2016. The secretary now asks this court to hold the Defendants in contempt for their failure to pay under the terms of the Consent Order. For the reasons set forth below I grant that motion.

1

**Finding of Fact**

Pursuant to the terms of the Consent Order the Defendants agreed to pay $1,179,842.55 in back wages that they owed to 478 employees. The Defendants were to make payments under a payment schedule with the final payment due on October 2, 2019. However, since the second payment (due on October 1, 2016) the Defendants have failed to pay on a regular basis. For fifteen months from March 2018 thru May 2019, nothing was paid. Since May of 2019, Turn Key Lumber, Inc. ("Turn Key") has made payments of $10,000.00 monthly on behalf of Fernandes. No other Defendants have made any payments. Mr. Fernandes owns Turn Key and is the President, sole officer, and director. Turn Key also employs Fernandes and his wife, Natalia.

During the pendency of the Consent Order the Defendant Fernandes and Turn Key purchased numerous parcels of real estate. In November of 2019 Fernandez purchased property in Dade City, Florida for $600,000.00. This property was financed with a business partner each of whom paid $35,000.00 as a down payment. That property is held in a partnership.

In October 2018, Mr. and Mrs. Fernandes purchased a residential property in Bolton, Massachusetts. This property was purchased through a home equity line of credit in the amount of $231,000.00 on the Fernandes' Clinton residence. In addition, Mr. Fernandes borrowed $34,000.00 from Turn Key towards the purchase of the property.

In September of 2017 Turn Key purchased property in Fitzwilliam, NH for $355,000.00. Mr. Fernandes testified that he and his wife own the Fitzwilliam property even though title is in the name of Turn Key. That property was appraised in 2017 at $860,000.00. In October of 2018 Turn Key sold the property to Fitzwilliam LLC. for $375.000.00. Mr. Fernandes is the manager of the Fitzwilliam, LLC. and Mrs. Fernandes is the only member.

Prior to the Consent Order, Fernandes was actively involved in the real estate market. In September of 2014 Nine Green Realty Inc. purchased a property at 115 Coburn Avenue, in Gardner, Massachusetts for $200,000.00. Mr. Fernandes is the president, director, and treasurer of Nine Green Realty and that company has no other members. In November of 2017 the mortgage on that Gardner property was discharged. That property was appraised for $345,000.00.

In February 2013 the Defendant Force purchased property at 305 Leominster Shirley Road in Lunenburg, Massachusetts for $155,000. Force sold that property to Fernandes for $1.00 in April of 2014. Fernandes then sold that property to the Lunenburg Realty Trust, of which he is the only member. In 2016 Mr. and Mrs. Fernandes received $70,000.00 in rental income for the Lunenburg property (which was appraised at $855,000.00 in 2017), presumably from Turn Key which uses the property as a lumber yard and office location.

In 2010 Mr. and Mrs. Fernandes purchased their home at 376 Water Street, Clinton, Massachusetts for $92,000.00. The mortgage on that property was discharged in January of 2017. As mentioned above, in July of 2018 Fernandes obtained a home-improvement loan against the Clinton property in the amount of $231,000.00 which was used to purchase the Bolton property. As of October, 2019 the balance on that loan was $198,000.00.

In addition Fernandes has transferred substantial amounts of money from his various bank accounts. Between April 26 and May 1, 2018, he transferred at least $314,000.00 from Turn Key's TD Bank account to his personal TD bank account. In October 22, 2018, he withdrew at least $158,845.97 from his personal TD bank account. In 2016 Turn Key transferred between $10,000.00 and $20,000.00 to Brazil. Fernandes and his wife received raises from Turn Key in

2018 and in February of 2019 Fernandes spent over $4,500.00 at the Fountain Blue Resort in Miami, Florida as a personal vacation for himself and his wife.

Also, since January 2017 Turn Key made significant capital purchases for equipment and vehicles. That equipment included: twelve trailers, four freight liners, one Izuzu truck, a transcut, two copiers, a Moffet forklift, two telescopic forklifts, a boom lift, two handlers, three forklifts, and a Volvo truck. The total amount of the loans for the equipment and vehicles was over $1,148,000.00. Turn Key has since paid over $630,000.00 to reduce the loan balance. Mr. Fernandes has filed personal tax returns for the years 2016, 2017, and 2018. However, he did not submit them to this Court as part of his case in chief. Nor did he submit personal bank statements or personal salary information.

## Ruling of Law

I find that the Secretary has established a prima facie case for civil contempt against the Defendants, Dos Santos, Force, and AB Construction as they presented no evidence to the Court in opposition. With respect to Dos Santos, Force, and AB Construction, since they chose not to produce any evidence they have not met their burden to show an inability to comply with the Consent Order they are found to be in contempt.

In order for the Defendant Fernandes to be found in contempt, the Secretary must show that he violated the Consent Order by clear and convincing proof. *Donovan v. Sovereign SEC., Ltd.,* 726 F.2nd 55, 59 (2nd Cir. 1984). Further, the Secretary does not have the burden of showing that the Defendants were able to comply with the Courts order, instead the Defendant has the burden to show that he is unable to comply *Donovan v. Burgett Greenhouses, Inc.,* 759 F.2nd. 1483, 1486 (10th Cir. 1985). I find that the Secretary has demonstrated by clear and convincing proof that Mr. Fernandes has violated this court's consent judgment.

4

Once the Secretary has established the prima facie case for contempt, it is the burden of the Defendant to show that he cannot comply with the Courts order. *Donovan v. Burgett Greenhouse, Inc.,* 759 F.2nd at 1486 (10th Cir. 1985). And, in order to avoid contempt the Defendants "must do more than simply show that [their efforts] to comply were substantial or made in good faith; rather the Defendants must plainly and unmistakably demonstrate an inability to comply with the Courts order." *Chao v. SOS Security Service, Inc.,* 526 F. Supp. 2nd 196, 203 (D.P.R. 2007). The burden on the Defendants to show that they cannot comply with the Courts order is a heavy burden. *Burgett Greenhouse, Inc.,* 759 F.2nd at 1486; *Donovan v. Sovereign Security., LTD.,* 726 F.2nd at 59. It is Fernandes position that it is impossible for him to pay what he owes under the Consent Order because his business faces significant liens and is cash strapped. However, at best Fernandes shows indebtedness to various vendors, and that he has entered into agreements for judgment which obligate him to pay on a monthly basis. This inability to pay argument is significantly undercut by the facts.

During the pendency of the Consent Judgment Fernandes purchased over a million dollars worth of real estate in Florida, Bolton, MA, and Fitzwilliam, NH. He was able to come up with $35,000.00 to make the down payment on the Florida property, obtained a $231,000.00 home equity loan on his residence, and he used $34,000.00 from Turn Key to purchase the Bolton property. He owns property Lunenburg, MA worth over $800,000.00 and property in Gardner, MA worth over $300,000.00 which he chose not to liquidate in order to pay the Consent Judgment. In addition, in what can only be viewed as an act of hubris, he voted himself and his wife a raise from Turn Key and chose to take an expensive vacation at the Fountainebleau Resort in Miami, FL which he paid for from his personal account. Further, I am troubled by the fact that Mr. Fernandes did not provide his personal tax returns from 2016, 2017, and 2018 to the

Court. That Mr. Fernandes has chosen not to supply these tax returns severely undercuts his inability to pay argument and detracts from his credibility.

Both parties make much of the relationship between Fernandes and Turn Key. Fernandes argues that finding him in contempt does not justify granting relief against Turn Key in its corporate capacity. The Secretary argues that Turn Key's assets and corporate structure are relevant to Fernandes ability to pay on the Consent Judgment because Fernandes and Turn Key are interchangeable and Fernandes continually uses Turn Key's funds to satisfy his own obligations, and has demonstrated a clear practice of intermingling Turn Key's assets and liabilities with his own.

Turn Key paid the property taxes on Fernandes' personally owned property. Turn Key purchased the Fitzwilliam, NH property and then transferred it to Fernandes' Fitzwilliam, LLC., for no consideration. Fernandes used $34,000.00 from Turn Key towards purchasing the Bolton property and used Turn Key materials for the construction of the Bolton property. Mr. Fernandes has transferred over $300,000.00 from Turn Key to his personal bank account, and Turn Key pays the monthly payments for Mr. and Mrs. Fernandes' personal vehicles. Because Mr. Fernandes uses Turn Key interchangeably with his own personal assets, to disregard Turn Key's role would allow Mr. Fernandes to use Turn Key as a sword and a shield.

Finally, Fernandes may not avoid contempt for failure to comply through a self-induced inability to pay. Mr. Fernandes' purchased three properties during the time that he was obligated under the Consent Judgment. His capitol expenditures, likewise lead this Court to conclude that Mr. Fernandes is either hiding assets or deliberately obfuscating his financial position to avoid paying the Consent Judgment. These purchases further underscore the importance to the court of the Fernandes/Turn Key tax returns.

## Order

For the reasons set forth above, I find the Defendants in contempt. I appoint Paul C. Foley, Esq. as Special Master to inspect and assess the assets, income and liabilities of the Defendants, Turn Key Lumber, Inc., Natalia Fernandes, Fitzwilliam, LLC, Nine Green Realty, Inc., Lunenburg Realty Trust, and the partnership that owns property in Dade County, Florida (as discussed above, but not identified). During the pendency of this investigation and otherwise until further order this Court, the Defendants are restrained and enjoined from:

- transferring their interest, ownership or control of any entity in which they presently hold such interest, ownership or control;
- transferring or encumbering any real estate held by themselves individually or in entities otherwise owned or controlled by them;
- authorizing, receiving or making distributions or dividend payments from any entity owned or controlled by them;
- voting themselves any increase in salary or other compensation; and
- making transfers of money, property or assets among themselves or any entities owned or controlled by them except as and to the extent needed for operational purposes or as are shown to be normal and customary payments of salary or other compensation.

Following the Special Master's investigation, he shall issue a report and to make a recommendation to the Court whether to order the liquidation of assets, impose a schedule to pay, or incarcerate. The Court will determine at that time whether to appoint the Special Master as receiver for purposes of carrying out the Court's further orders. The Defendants and those entities owned or controlled by them are to cooperate with the Special Master and provide all

pertinent information, including but not limited to documents, books, records, invoices, financial statements, and tax returns, as requested.

In furtherance of the foregoing:

1. The Special Master shall have the authority to compel, take, and record evidence. This includes the authority to: require the production of documents and other records from the parties and third-parties; require responses to interrogatories, and other requests for information and admissions; conduct depositions; and conduct hearings.

2. The Special Master may communicate <u>ex parte</u> with any party.

The court understands that the Special Master will charge $300 per hour for his services and finds that rate to be reasonable. The Special Master's fees shall be paid by the Defendants or otherwise from their assets. The Special Master is authorized to hire such professionals as he may deem necessary to his investigation upon presentation by motion and order of the Court.

**SO ORDERED**

<u>**/s/ Timothy S. Hillman**</u><br>
**TIMOTHY S. HILLMAN**<br>
**DISTRICT JUDGE**